UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| GEORGE GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:05CV00007 DJS/AGF |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff George Graham's applications for disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. § 401, et seq., and Supplemental Security Income (SSI) under Title XVI of the SSA, § 1381, et seq. The action was referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

Plaintiff, who was born on December 10, 1948, applied for disability benefits and SSI on October 9, 2003, claiming a disability onset date of June 18, 2003, due to back pain. After his applications were denied initially, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing, at which Plaintiff and a vocational expert testified, was held on July 22, 2004. The ALJ issued a decision on September 22, 2004, finding that although Plaintiff could not perform his past work as a truck mechanic or

truck mechanic helper, there were available jobs he could perform, and so he was not disabled as defined by the SSA. The Appeals Council of the Social Security Administration denied Plaintiff's request for review. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony at the hearing regarding his lifting ability. Plaintiff asks the Court to reverse the Commissioner's decision and order an award of benefits, or alternatively, to reverse the decision and remand the case for further proceedings.

## BACKGROUND

**Work Record and DisabilityApplications**

Plaintiff worked from 1992 through mid-June 2003 (and for a few weeks in September 2003) as a truck mechanic or truck mechanic helper. He earned approximately $9,000 to $16,000 annually during these years. Tr. at 65, 76, 89. It appears that Plaintiff worked as a ranch hand from 1989 through 1992. Tr. 89. He did not work in 1988, but had other employment, the nature of which was not identified, from 1963 through 1987, earning between $819 to $9,876 per year. Tr. 64-65. On forms accompanying his applications for benefits, Plaintiff claimed that he had been unable to work since June 18, 2003, due to a bad back, which restricted his ability to bend, stoop, reach above the head, and twist. He reported that he shopped once a week for about an hour, mowed his yard, drove 25-30 miles daily, and could not sit for more than an hour without having to get up

2

and move around.  He indicated that his ability to take care of his grooming needs had not changed since the onset of his impairment.  Plaintiff noted that he was taking several nonprescription medications (Ibuprofen, Tylenol, Advil), and that he had a TENS unit[1] on his back for pain. Tr. at 80-86.

**<u>Medical Record</u>**

On June 18, 2003, the alleged disability onset date, Plaintiff presented himself to the office of Carl Carney, D.C., with complaints of low back pain.  Plaintiff stated that he had been lifting tires weighing approximately 130 pounds, and that he had to leave work due to the pain he was experiencing.  Dr. Carney diagnosed Plaintiff with a "lumbar intervertebral disc," low back pain, and muscle spasms of the lumbar paravertebral muscles.   Dr. Carney treated Plaintiff with manual manipulation and intersegmental traction on that day and on June 20, 23, 25, 27 and 30, 2003.  Dr. Carney's records reflect that Plaintiff was dismissed from treatment as of July 1, 2003, to see an orthopedic physician.  Tr. at 93-96.

Plaintiff was seen at Columbia Orthopaedic Group on July 1, 2003, apparently having been referred by the worker's compensation insurance company.  Tr. 100, 113. The record contains progress reports to Dennis Abernathie, M.D., from Moberly Rehabilitation, a rehabilitation clinic to which Plaintiff was referred by Dr. Abernathie. The reports cover  Plaintiff's treatment from July 2, 2003 through September 10, 2003.

---

[1] TENS (Transcutaneous Electrical Nerve Stimulation) is a treatment for pain in which pads are placed near the area of pain and electrical pulses are sent via the pads through the skin along the nerve fibers.  The pulses suppress pain signals to the brain.

Treatment included lumbar strengthening, abdominal strengthening, and a TENS unit. In the last report, the physical therapist noted that Plaintiff continued to complain of soreness in his lumbar region. The soreness had increased mildly with his return to work. Plaintiff thought this was because he was not used to activity. Plaintiff stated that the TENS unit decreased his discomfort, but that he ceased using it due to accidently turning the frequency up when it was on. The physical therapist wrote that a safer TENS unit would be ordered; that Plaintiff's range of motion was approximately 25% limited; that his strength was grossly normal; and that Plaintiff had progressed well and had been compliant with his exercises. Tr. 103-06.

A statement by Dr. Abernathie dated September 10, 2003, reported the results of his examination of Plaintiff in connection with a workers' compensation claim. Dr. Abernathie wrote that Plaintiff was "okay" neurologically; that he had good dorsiflexion, plantar flexion, and eversion strength; and that he could do a pelvic tilt leaning against the wall, but not independently. Plaintiff had worn a TENS unit with good effect, and Dr. Abernathie opined that Plaintiff would probably need that long-term, once the safer unit was ordered. Dr. Abernathie wrote that he did not expect Plaintiff "to improve any time soon," but that he expected "things to settle down as [Plaintiff] gets older," if Plaintiff worked "within his restrictions." In the next sentence, Dr. Abernathie wrote that Plaintiff's back "should certainly improve," as Plaintiff "tends to stiffen and the back doesn't move as much." Dr. Abernathie noted that Plaintiff had not been doing abdominal strengthening or pelvic tilts, which would bring him more comfort until matters

4

improved.  He also noted that Plaintiff was taking Mobic[2] and understood his work restrictions.  Dr. Abernathie ended his statement as follows:

> [Plaintiff's] lack of work may partly be due to lack of ability of that type of work and also his own aging process where he's starting to hurt all over but not necessarily related to a specific trauma to his lower back. Because of the chronic sprain of the lower back, I would rate him as 5% of the body as a whole.

Tr. at 101.

Eddie W. Runde, M.D., examined Plaintiff on November 25, 2003, for the state office of disability determinations.  Plaintiff, who Dr. Runde considered to be reliable, reported that Dr. Abernathie had released him with permanent restrictions of lifting no more than ten pounds from the ground; no bending, stooping, or reaching; no pushing more than 30 pounds; and no pulling more than 50 pounds.  Plaintiff reported that he continued to have a pressure-like low back pain that worsened with bending, stooping, getting up and down from a chair, and sitting or driving for more than an hour.  Plaintiff reported that he used Ibuprofen which lessened his pain, although his home exercises, including walking, which he continued to do, did not help him.  He also reported that he sometimes had lateral right thigh numbness, without exacerbating or ameliorating factors.  On a scale of 1-10 (with 10 being the worst pain imaginable), Plaintiff rated his pain as a 3 currently; at the worst a 4; and on average (for the past two weeks) a 2.  Tr. at 113.

---

[2] Mobic is a non-steroidal anti-inflammatory drug indicated to help relieve the symptoms of osteoarthritis and rheumatoid arthritis. http://www.mobictablet.com

5

Dr. Runde's examination indicated that Plaintiff had a mild mood disturbance. Dr. Runde noted that low-level depression was common in people with chronic pain syndrome. He described Plaintiff as obese, and found that Plaintiff's lumbar and hip ranges of motion and supine straight leg raises were limited by complaints of midline low back pain, without radicular pain. Plaintiff's strength was found to be normal, as was his gait, except for decreased arm-swinging when walking. Dr. Runde diagnosed low back pain syndrome, probable degenerative spine disease, and probable deconditioning syndrome.[3] Dr. Runde concluded that, "[d]espite the recommendations of Dr. Abernathie," Plaintiff should be able to lift 50 pounds occasionally and 30 pounds frequently, with floor-to-waist lifting limited to 30 pounds "solely based on symptoms." Dr. Runde found no limitations in Plaintiff's ability to push/pull, stand, walk, handle objects, and travel, and opined that if the noted restrictions could be accommodated, Plaintiff should be able to sustain a 40-hour workweek on a continuous basis. Tr. at 114-15.

A Physical Residual Functional Capacity (RFC) Assessment was completed on December 9, 2003, by Ruth Martin, who signed the form as a Medical Consultant, noting also that she was a Senior Counselor. Ms. Martin indicated that based upon the evidence in Plaintiff's file, he could lift 50 pounds occasionally and 25 pounds frequently; stand

---

[3] People who respond to pain by significantly curtailing their daily physical activities may develop a deconditioning syndrome. In other words, they "get out of shape." Joints become stiff, muscles become flabby, endurance decreases, and some put on excess weight. The deconditioning syndrome leads to decreased pain tolerance.

and/or walk and sit six hours in an eight-hour workday; and push and/or pull without limitation. She indicated that Plaintiff had no postural (climbing, stooping, kneeling, etc.), manipulative, visual, communicative, or environmental limitations, other than the need to avoid concentrated exposure to vibrations. Tr. 116-23.

An evaluation of Plaintiff's cognitive and academic abilities dated March 6, 2004, indicated that Plaintiff's overall cognitive functioning was in the low average range, with a full scale IQ of 83. He tested borderline in several skill areas, including general fund of knowledge and common sense/social judgment. Plaintiff's education was considered marginal for reading and spelling; arithmetic achievement was in the average range. Tr. at 127-29.

**Evidentiary Hearing**

At the July 22, 2004 hearing, Plaintiff, who was represented by counsel, testified that he was 55 years old, had an eighth grade education, could read and write simple things, and lived with his wife. He testified that he left his job after hurting his back in an accident at work in June 2003, and then tried to return to work for a few weeks in September of that year, but could not continue due to low back pain. Plaintiff testified that he was not seeing any doctors for his health care at the time of the hearing, and that he was not taking any prescription medication. However he also stated that he was seeing Dr. Carney once or twice a month. Tr. 24-27.

Plaintiff testified that he spent his days sitting a lot. When his half acre of grass needed mowing, he would mow it using a riding mower, resting after 15 minutes of work. He also testified that about once a month he did some competition shooting with his .50

caliber black powder rifle, and that he also used this rifle for occasional deer hunting. He testified that he only went deer hunting a "little bit," as his back condition did not let him walk too much anymore, and that his son-in-law would do all the skinning and related work. Plaintiff testified that he drove a full-size 150 Ford pickup truck, and that he had no trouble getting in and out of the cab, using the running board.[4] Plaintiff testified that since he had stopped working, he had taken two trips involving two-and-a-half to three hours of driving each way to visit relatives. Plaintiff stated that he could stand for about 15 minutes at a time before his right leg would get numb and his back would start to hurt. He testified that he could walk a quarter of a mile, and that the heaviest item he could lift was a gallon of gas, which weighed about eight pounds. Tr. at 27-33.

A vocational expert was asked to assume an individual of Plaintiff's age, education, and work history, who would be limited to sitting, standing, and walking six hours in an eight-hour workday; and to lifting or carrying a maximum of 50 pounds occasionally and 25 pounds frequently. The VE testified that such an individual could not perform Plaintiff's past work, but that there were available jobs the individual could do, such as food preparer and cafeteria attendant, both of which were classified in the Dictionary of Occupational Titles (DOT) as light work.[5] The VE further testified that

---

[4] As noted above, in forms accompanying his application, Plaintiff reported that he drove 25-30 miles per day. Tr. at 83.

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category might require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

such an individual could be a cashier, which was classified variously as light and medium work.[6] Tr. at 35-37.

**ALJ's Decision**

The ALJ found that Plaintiff had low back pain syndrome, and that this was a severe impairment, but one that did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Appendix 1). In reviewing the medical evidence, the ALJ gave Dr. Abernathie's September 10, 2003 statement limited weight, finding it to be conclusory with no indication regarding what limitations were imposed. The ALJ gave great weight to Dr. Runde's November 25, 2003 evaluation, noting that it was based on a comprehensive physical examination and was consistent with the weight of the evidence of record. The ALJ likewise gave great weight to the December 9, 2003 state agency RFC assessment, which was based upon Dr. Runde's report. Tr. at 13-14.

The ALJ proceeded to determine Plaintiff's RFC, noting that in doing so he had to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the objective medical evidence and other evidence based upon the requirements of 20 CFR § 404.1529 . . . and Social Security Ruling 96-7p." Tr. at 15. Under § 404.1529 and SSR 96-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL

---

[6] Medium work involves lifting 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. § 404.1567(c). Social Security Ruling (SSR) 83-10 interpreting this regulation dictates that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10, 1983 WL 31251, at *6.

374186 (July 2, 1996)), the factors an ALJ is to consider in evaluating a claimant's complaints of pain include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; the type, dosage, effectiveness, and side effects of medication; treatment, other than medication; and measures used to relieve the pain.

Here, the ALJ found that Plaintiff's statements concerning his impairments and their impact on his continued ability to work were "not entirely credible" in light of discrepancies between Plaintiff's assertions and the medical record. The ALJ noted that there were no objective diagnostic tests -- such as x-rays or MRI scans -- showing the cause of Plaintiff's back pain. The ALJ also noted that the record did not show any treatment since September 2003, despite Plaintiff's testimony that he was seeing Dr. Carney once or twice a month. The ALJ also noted that Plaintiff was only taking over-the-counter anti-inflammatory medication for his back pain. The ALJ stated that Plaintiff testified that Dr. Abernathie restricted him to lifting no more than ten pounds, while Dr. Abernathie's treatment records did not reflect this limitation. This indicated to the ALJ that Plaintiff may have exaggerated his limitations. Tr. at 13-15.

The ALJ also found that Plaintiff's asserted limitations were not consistent with his self-reported activities of daily living. The ALJ noted that Plaintiff was able to handle his personal grooming needs, drive and go out regularly, use a rifle for shooting competitions and deer hunting, and take driving trips of two-and-one-half to three hours. The ALJ found that these activities were consistent with the ability to perform work at some level of exertion. The ALJ found that Plaintiff had the RFC to sit, stand and/or walk for six hours in an eight-hour workday; lift and carry 25 pounds frequently and 50

10

pounds occasionally; and perform floor-to-waist lifting of 30 pounds only occasionally. The ALJ concluded that this RFC did not enable Plaintiff to return to his former work, but did enable him to perform a significant range of medium work, and therefore also light and sedentary work. Tr. at 15-17.

The ALJ noted that if Plaintiff were able to perform the full range of medium work, the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (Guidelines), would direct a finding of "not disabled." The ALJ held, however, that in light of Plaintiff's vocational factors (age, education, work experience), Plaintiff's ability to perform all or substantially all the requirements of medium work was impeded by "exertional and/or non-exertional limitations." The ALJ, accordingly, considered the testimony of the vocational expert, and based upon this testimony found that Plaintiff retained the capacity for work that exists in significant numbers in the national economy, and was therefore not under a "disability" as defined in the SSA.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of

11

the record for the existence of substantial evidence in support of the Commissioner's decision . . . the court must also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). If after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

In order to qualify for Social Security disability benefits, a person must demonstrate an inability to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both the impairment and the inability to engage in substantial gainful employment must last or be expected to last not less than 12 months).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment (or combination of impairments), defined in 20 C.F.R. § 404.1520(c) as an impairment which significantly limits a claimant's physical or mental ability to do basic work activities. If

the claimant's impairment is not severe, the disability claim is denied. If the impairment is severe, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix 1.

If the claimant's impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled. If the impairment is one that does not meet or equal a listed impairment, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant is able to perform his past relevant work, he is not disabled. If he cannot perform his past relevant work, step five asks whether the claimant has the RFC to perform work in the national economy in view of his vocational factors. If not, the claimant is declared disabled and is entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)-(f); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

At step five, the burden is upon the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of jobs in the national economy that are consistent with the claimant's impairments and with his vocational factors. Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). Where a claimant cannot perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) due to nonexertional impairments such as pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony by a vocational expert. Id.; Wilcutts v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998). The response of a vocational expert to a hypothetical question that includes all of a claimant's impairments properly accepted as true by the ALJ constitutes substantial evidence to

support a conclusion at step five of no disability. Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001).

Here, as set forth above, the ALJ concluded at step two that Plaintiff's back pain syndrome was a severe impairment. At step three the ALJ concluded that this impairment did not meet or equal a listed impairment. The ALJ then concluded at step four that Plaintiff was unable to perform his past relevant work. At step five the ALJ concluded, based upon the testimony of the vocational expert, that Plaintiff was capable of performing other work in the economy and was, thus, not disabled.

**ALJ's Discrediting Plaintiff's Allegations of Disabling Pain**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly discredited Plaintiff's allegations regarding his lifting ability because the ALJ did not discuss the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), for considering a claimant's subjective allegation of symptoms; and did not make express credibility determinations setting forth inconsistencies in the record detailing his reasons for discrediting Plaintiff's testimony.

In Polaski, the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints," and that other factors include "observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Polaski, 739

14

F.2d at 1322. The Eighth Circuit has also held that after considering the Polaski factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that caused him to reject the claimant's complaints. Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998). "The decision of an ALJ who seriously considered, but for good cause expressly discredits a claimant's subjective complaints . . . is not to be disturbed." Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

Here, the ALJ did not cite Polaski. However, the ALJ did cite the proper regulations upon which Polaski is based, and he correctly listed the relevant factors that should be considered in assessing the credibility of Plaintiff's subjective complaints. The ALJ considered Plaintiff's daily activities, the observations by his treating physician, and Plaintiff's medications. No error arises from the ALJ's failure to cite Polaski. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ's failure to cite Polaski is not error where proper factors are noted and considered); see also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (the ALJ need not discuss each factor listed in Polaski, so long as the analytical framework is recognized and considered).

In many disability cases, there is no doubt that the plaintiff is experiencing pain; "the real issue is how severe that pain is." Sampson v. Apfel, 165 F.3d 616, 619 (8th Cir. 1999). Here, the fact that Plaintiff was not taking any prescription pain medication supports the ALJ's discrediting Plaintiff's subjective complaints of disabling pain. See Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (in discrediting extent of pain alleged by plaintiff, ALJ properly considered plaintiff's failure to take any narcotic medication for pain where plaintiff was only taking non-steroidal anti-inflammatory

15

drugs); Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (complaints of disabling back pain were inconsistent with plaintiff's failure to take prescription pain medications). In addition, it appears that Plaintiff received little, if any, medical treatment after September 2003. No treatment notes were provided to the ALJ for any period after that date. Nor were any additional medical records provided in connection with the request for review of the hearing decision. Tr. at 7.

Plaintiff's daily activities were also a proper basis for discrediting the extent of pain alleged by Plaintiff. The ALJ properly relied upon Plaintiff's ability to take care of his own grooming needs, use a rifle for shooting competitions and deer hunting, drive two-to-three hours to visit relatives on two occasions, and drive 25-30 miles daily in finding Plaintiff's allegations of disabling pain to be of limited credibility. Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. Haley, 258 F.3d at 748 (plaintiff's complaints of disabling pain were inconsistent with his statements that he took care of his personal needs, did some household chores, shopped, drove, visited friends and relatives, and attended church twice a week).

There is one aspect of the ALJ's decision that the Court finds somewhat troubling. The ALJ stated that Plaintiff testified that Dr. Abernathie restricted him to lifting no more than ten pounds. The ALJ noted that Dr. Abernathie's September 10, 2003 statement did not include restrictions, and the ALJ believed that this indicated that Plaintiff may have been exaggerating his limitations. The Court's review of the hearing transcript reveals no such testimony by Plaintiff. The ALJ may have been referring to Dr. Runde's statement that Plaintiff told him that Dr. Abernathie had released Plaintiff with permanent

16

restrictions of lifting no more than ten pounds from the ground. It seems clear from Dr. Abernathie's statement that certain restrictions had been imposed, and as the record does not include them, it is hard to know whether Plaintiff was exaggerating.

Nevertheless, the ALJ was entitled to credit Dr. Runde's opinion over the reported opinion of Dr. Abernathie with respect to how much Plaintiff could lift from the ground. See Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (it is the ALJ's function to resolve conflicts among the various treating and examining physicians). Dr. Runde's opinion was consistent with his examination findings. As stated above, the ALJ also had a proper basis for disbelieving Plaintiff's testimony that the most he could lift was eight pounds.

In sum, the Court concludes that the ALJ was entitled to discredit the extent of pain alleged by Plaintiff and to find that his pain did not preclude all work. The hypothetical question posed to the vocational expert included all of Plaintiff's impairments properly accepted as true by the ALJ.

## CONCLUSION

The Commissioner met her burden of proving that Plaintiff had the RFC to perform jobs that exist in the national economy. Substantial evidence supports the ALJ's decision that while Plaintiff experiences some pain and limitations, he is not disabled within the meaning of the Social Security Act.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed.

The parties are advised they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of November, 2005.